UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12032-RGS

LAUREN MICELI

v.

JETBLUE AIRWAYS CORP.
and MATHEW BOURGEOIS

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

March 28, 2018

STEARNS, D.J.

In December of 2015, JetBlue Airways terminated flight attendant Lauren Miceli for absenteeism.[1] Miceli alleges that the discharge was motivated by animus for her disability (post-traumatic stress disorder) and in retaliation for a claim that she filed with the Massachusetts Commission Against Discrimination (MCAD). Discovery having been completed, defendants move for summary judgment.

BACKGROUND

JetBlue is a major airline operating at Boston's Logan Airport. In March of 2006, JetBlue hired Miceli as a full-time Inflight Crewmember

---

[1] During the relevant time period, defendant Mathew Bourgeois served as JetBlue's Boston Inflight Base Manager.

(flight attendant) based out of Logan. On her first day of work, Miceli signed an Acknowledgement of Receipt of the Crewmember Blue Book. *See* Defs.' Ex. V (Dkt # 36-22). The Blue Book sets out JetBlue's employment rules and policies. The Blue Book states that employment with JetBlue is at will, Defs.' Ex. G (Dkt # 36-7) § 4.1, and includes, inter alia, an attendance policy. "While safety is our first value, JetBlue strives to be an 'On-Time Airline.' Therefore, Crewmember attendance and punctuality is essential to ensure that JetBlue lives up to this commitment to benefit our Customers. Crewmembers are expected to arrive for work on time, fit and ready for duty." *Id.* § 6.1. "Crewmembers should follow their Department's dependability guidelines when they cannot report to work. . . . Unacceptable reasons for absences, a persistent pattern of absences or an excessive amount of absences for any reasons, except for a substantiated FMLA [(Family and Medical Leave Act)] leave or other substantiated leave protected by law, may result in Progressive Guidance, up to and including termination." *Id.* § 6.1.1.

The specific dependability policy applicable to Miceli is outlined in the Inflight Blue Book Supplement. Crewmember attendance is recorded over a rolling 12-month period. Defs.' Ex. H (Dkt # 36-8) § 7.2.1. Dependability lapses – for example tardiness or an unscheduled absence – are assigned a category code and a point value. *Id.* §§ 7.2.3-7.2.4. A crewmember who

accumulates 12 points within a 12-month period is subject to employment review (any point level greater than 4 is subject to Progressive Guidance, JetBlue's terminology for employee disciplinary action.) *Id.* § 7.2.5.

By February of 2015, Miceli had accrued 7.5 dependability points and had received an Initial Progressive Guidance review from her supervisor, Tara McCarthy. In or about March of 2015, Miceli was diagnosed with post-traumatic stress disorder (PTSD) and depression/anxiety induced by a work-related ear injury suffered in 2014. Acting on the recommendation of Miceli's doctor, to accommodate Miceli's "flare-ups" and treatment, Pl.'s Ex. X (Dkt # 48-27), Metropolitan Life Insurance Company (MetLife), JetBlue's leave administrator, approved Miceli for intermittent FMLA leave of one absence of one day's duration beginning on or about March 16. Again, at the recommendation of Miceli's doctor, MetLife expanded her FMLA leave authorization to cover one five-day absence each month beginning June 18, 2015. *See id.*

Between March and May of 2015, Miceli was absent from work on multiple occasions. MetLife recorded Miceli as taking approved voluntary short-term disability leave from March 3 to March 13. Defs.' Ex. D (Dkt # 36-4) at JB000183. March 14 was coded as "UNA" (unavailable for assignment). *Id.* On March 16, Miceli was out on approved FMLA leave. She

3

was again out between March 23 and 24 and on April 4, and these two absences were recorded as "FMLA denied – outside of parameters." *Id.* The next absence, on May 18, was recorded as "FMLA denied – did not meet notification requirements." *Id.*[2] Miceli missed work again on approved FMLA leave on May 22.

On May 27 or May 28, 2015, Miceli received a Continued Progressive Guidance and met with McCarthy and Tenekka Hilliard, JetBlue's Leave Coordinator, to discuss her work attendance record. At the meeting, Miceli stated her belief that some of the absences had been miscoded, and should have been excused as FMLA leave. According to Miceli, McCarthy took an inappropriate "motherly" tone with her, Defs.' Ex. C (Dkt # 36-3) at 106-107, stating that "it [was] hard to believe" that Miceli had submitted the appropriate paperwork to MetLife, *id.* at 103. Hilliard advised Miceli that her absences could be retroactively recoded if she were to submit the appropriate documentation to MetLife.

On the following day, Miceli met with Bourgeois (McCarthy's superior) to discuss her difficulty in obtaining approved FMLA leave. She also complained that McCarthy gossiped about her personal issues with her

---

[2] The Blue Book states that, absent extenuating circumstances, "Crewmembers will have seven (7) days from the leave effective date to report an FMLA leave to MetLife." Defs.' Ex. G § 7.9.5.

4

coworkers. Miceli states that she told Bourgeois that she suffered from PTSD, and that she had a panic attack during the meeting. Bourgeois concluded the meeting abruptly and asked Miceli to send him an email documenting her concerns, which she did on July 1. The email read, in part, as follows.

> It is widely known at JetBlue that MetLife has been less then [sic] fair or on task with their end of the Fmla proceedings. JetBlue has had massive issues with them, and you yourself told me that they are contemplating other providers. I find it to go against the values of JetBlue with regards to how I have been treated. Caring is one of the core values of JetBlue and as an employee with a disability I feel that I have been treated poorly with regards to my situation. I accomplished each task with regards to my disability claim as well as Fmla. When I called to confirm my acceptance MetLife told me that I have been approved since March. It is not my issue that they and JetBlue have some sort of miscommunication or technology disruption whereas it causes it to look denied or incomplete. I am a flight attendant with no access to your or their system. That is out of my hands. However the behavior exhibited by my team leader and those who chose to be involved was unprofessional and I find it disheartening when all are aware that we are dealing with a disability and when the caring value is needed most. I now feel uncomfortable, my character compromised as well as my privacy and this is very challenging for me to deal with.

Defs.' Ex O (Dkt # 36-15).

On July 10, 2015, Noreen Dowd, a member of JetBlue's People Resources Team, sent Miceli an email, explaining MetLife's reason for denying her certain absences.

> We spoke with MetLife in regards to the dates that were showing as "denied" in the system. You advised that your doctor was sending in additional certification paperwork to MetLife in order to change your parameters (frequency and duration) which were 1 per month for 1 day. MetLife has received the updated paperwork and your new parameters (frequency and duration) are 1 per month for up to 5 days. However, the dates on the paperwork are from 6/18/15 to 12/17/15. Therefore, the dates prior to that (3/23, 3/24, 4/4, & 5/18) are still "denied" by MetLife and will remain coded as UNA.

Defs.' Ex K (Dkt # 36-11). In June and July of 2015, MetLife recorded Miceli as having been absent on June 11 ("FMLA Approved"), June 26 to June 28 ("FMLA Approved"), July 8 to July 10 ("UNA"), July 17 ("FMLA Approved"), July 29 to July 30 ("FMLA Approved"). Defs.' Ex. D at JB000183. On July 17, having reviewed Miceli's attendance record, Bourgeois placed her on Final Progressive Guidance. Pl.'s Ex. K (Dkt #48-12).

Miceli was hospitalized from July 30 to August 5, 2015, and received inpatient and outpatient mental health treatment thereafter. Based on the documentation submitted by her doctor, MetLife approved Miceli for disability leave from August 6 until November 15, 2015. *See* Defs.' Ex. P (Dkt # 36-16). MetLife recorded Miceli as "UNA" on August 4. Defs.' Ex. D at JB000183. While she was on disability leave, Bourgeois reviewed Miceli's attendance record again, and determined that, with the August 4 unexcused absence, Miceli had accrued 12 dependability points warranting termination. Shortly after Miceli returned to work, on November 17, 2015, Bourgeois

6

suspended Miceli, and informed her that she could submit a responsive statement regarding her dependability record by November 24. Defs.' Ex. S (Dkt # 36-19). Miceli did not submit a statement, and was terminated by JetBlue on December 15.

Miceli lodged a complaint with the MCAD on December 9, 2015, and filed this lawsuit in Suffolk Superior Court in July of 2016. The Complaint alleges disability discrimination in violation of Mass Gen. Laws Ch. 151B, § 4 (Count I), and retaliation (Count II). JetBlue timely removed the case to this court on the basis of diversity jurisdiction.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements v. Town of Dedham*, 43 F.3d 731, 736 (1st Cir. 1995) (citation omitted).

Mass. Gen. Laws ch. 151B, § 4(16) prohibits an employer from "dismiss[ing] from employment . . . or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation." Like claims brought under the Americans with Disability Act (ADA), where there is no direct evidence of discrimination (as is the case here), the analysis of the parallel state law claim is guided by the burden-shifting framework set out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gannon v. City of Boston*, 476 Mass. 786, 793, (2017).

> In the first stage, the employee has the burden to establish a prima facie case of discrimination by showing that (1) he is a member of a class protected by G.L. c. 151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's. . . . The prima facie case eliminates the most common nondiscriminatory reasons for the plaintiff's rejection, which are lack of competence and lack of job availability, and thereby creates a presumption of discrimination.

*Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 116 (2000) (internal quotation marks and citation omitted).

> Where the plaintiff employee makes this prima facie showing, the burden shifts to the employer to show with credible evidence that the real reason for the adverse employment action was not the employee's handicap but a lawful reason that was unrelated to the employee's handicap. Where the employer meets this

8

burden, the burden shifts back to the plaintiff employee to prove that the adverse action was taken "because of his [or her] handicap," G. L. c. 151B, § 4 (16), and not for the reason proffered by the employer.

*Gannon*, 476 Mass. at 794.

Defendants contend, and the court agrees, that Miceli has not proffered evidence that would allow a reasonable factfinder to conclude that JetBlue terminated her "because of" her disability.[3] JetBlue's explanation for Miceli's discharge is that, consistent with its stated policy, Miceli had accumulated 12 dependability points within a 12-month period. In other words, Miceli's work attendance was unacceptably erratic.

Miceli argues that JetBlue's reliance on her attendance record is pretextual because JetBlue incorrectly assessed her points for absences that should have been excused as FMLA leave. Critically, according to Miceli, JetBlue should not have penalized her for missing work on August 4, the absence that pushed her over the termination threshold. Miceli states that she informed MetLife of her hospitalization on July 30, and MetLife's records reflect that she had requested disability leave on that date. *See* Pl.'s

---

[3] Defendants characterize this as a failure to establish a prima facie case. This would be true under federal law, *see Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 126 (1st Cir. 2017) (third element of a prima facie case under the ADA is that employee "was discharged or otherwise adversely affected in whole or in part because of [her] disability."), and does not alter the ultimate outcome.

Ex. U (Ex. 48-24) (July 30, 2015 letter from MetLife to Miceli, indicating that MetLife "ha[s] been notified of [Miceli's] request to leave a leave of absence (LOA) for a serious health condition . . . that makes [her] unable to perform the essential functions of [her] job."). Miceli's father, Matthew, also called JetBlue on August 9 to inform JetBlue of Miceli's hospital stay.[4] *See* Pl.'s M (Dkt # 48-14). In addition, on November 2 (prior to her suspension), Miceli's attorney sent a letter to JetBlue's General Counsel and Dowd describing the circumstances giving rise to Micel's disability discrimination claim, and her intent to file a complaint with the MCAD. *See* Susan Trombetta Aff. Ex 1 (Dkt # 47-1) at JB000146 (Miceli "admitted herself into the Arbour mental health facility in Brookline, Massachusetts. She stayed at that facility for one week.").

Although Miceli attaches to her summary judgment affidavit a copy of the discharge form for her July 30 to August 5 hospital stay, there is no

---

[4] The court did not give weight to the uncorroborated statements in Matthew Miceli's affidavit (Dkt # 43) in support of plaintiff's opposition because he was not identified in plaintiff's Rule 26 disclosures nor in response to defendant's interrogatory seeking the names of potential witnesses. Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Plaintiff has not established that the failure to disclose her father as a material fact witness was either "substantially justified or [] harmless." Further, Matthew Miceli's affidavit does not bear an authentic signature.

evidence that she submitted any substantiating documentation to MetLife or JetBlue for that period of time prior to her termination.[5] The July 30 letter from MetLife informed Miceli that she must submit a Certification of Health Care Provider for Crewmember's Serious Health Condition to be approved for a leave of absence. Pl.'s Ex. U. The Certification submitted by Miceli's doctor indicates a condition start date of August 6, 2015. Defs.' Ex. P. Matthew Miceli's phone call to JetBlue was placed on August 9, within the certified period. Nor did Miceli's counsel clarify in his November 2 letter that her hospital stay included the week prior to August 6. *See* Susan Trombetta Aff. Ex. 1. In addition, the Progressive Guidance issued in connection with Miceli's suspension on November 15, 2015 identified August 4 as the "trigger event." Defs.' Ex. D at JB000188. Although invited to provide a responsive

---

[5] JetBlue's paperwork requirement is admittedly bureaucratic, but that is not a surprising finding in a large corporate organization, and is not discriminatory absent evidence of disparate enforcement. While a more compassionate employer might have been less unbending, this is a business judgment that falls outside the competence of a court evaluating an employer's actions for signs of discrimination. "The employer's reasons for its decision to terminate 'may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff cannot prevail.'" *Tate v. Dep't of Mental Health*, 419 Mass. at 363, quoting *Lewis v. Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 766 (1986).

statement by November 24, 2015 – and this is critical in the court's judgment – Miceli elected not to do so.

Likewise, while Miceli complained to McCarthy, Hilliard, Dowd, and Bourgeois that MetLife had miscoded certain prior absences between March and May of 2015, there is no evidence that Miceli ever submitted substantiating medical documentation for those dates.[6] MetLife approved intermittent FMLA for the dates and durations that were supported by documentation from Miceli's doctor. *See* Pl.'s Ex. X (once a month of one day from March 23, 2015, amended to once a month of five days from June 18, 2015). Although Miceli submits as an exhibit a memorandum dated July 21, 2015 from her doctor stating that her absences on March 23-24 and May 18 were for medical reasons, *see* Pl.'s Ex. T (Dkt # 48-23), there is no evidence that this memorandum was submitted to JetBlue or MetLife prior to her termination.

Finally, Miceli suggests that JetBlue either failed to provide a reasonable accommodation for her disability, or that JetBlue disparately enforced its dependability policy. As for the former, there is no evidence that Miceli submitted a request for an accommodation other than the three

---

[6] McCarthy, Hilliard, Dowd, and Bourgeois did not participate in MetLife's leave approval process.

approved leave requests. As to the latter, Miceli has offered no comparator evidence that other similarly situated employees received more favorable treatment.

> Miceli's second claim – retaliation – is an independent cause of action.
>
> To succeed on a claim of retaliation, "the plaintiff must prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that [she] acted reasonably in response to [her] belief, and that the [employer's] desire to retaliate against [her] was a determinative factor in its decision to terminate [her] employment."

*Abramian*, 432 Mass. at 121, quoting *Tate v. Department of Mental Health,* 419 Mass. 356, 364 (1995). There is no evidence that Miceli's MCAD complaint was "a determinative factor," or even a factor at all, in the decision for her termination. Bourgeois reviewed Miceli's attendance record and made the determination that she had accumulated 12 dependability points in October of 2015, *see* Defs.' Exs. R (Dkt #36-18) & Y (Dkt # 36-25); prior to JetBlue having received any notice that Miceli intended pursue a claim with the MCAD. JetBlue consistently enforced its dependability policy before and after having notice of Miceli's MCAD complaint, and issued Progressive Guidance to Miceli only as justified by her attendance record.[7] As noted above, Miceli also has no evidence that other similarly situated

---

[7] Defendants note that Miceli had received Progressive Guidance in six prior years as a result of her spotty attendance record.

employees were treated more favorably. Without linkage there can be no causation, and without causation the retaliation claim fails as a matter of law.

ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE